IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 25, 2017 at Knoxville

**MARCUS A. PARRAM v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-13-1      Kyle C. Atkins, Judge**

_____

**No. W2016-02477-CCA-R3-PC**

_____

In two separate cases, the Petitioner, Marcus A. Parram, pled guilty to domestic assault, stalking, harassment, and three counts of violation of an order of protection. He was sentenced to a total effective sentence of three years, suspended to probation. In his timely petition for post-conviction relief, he claims that trial counsel was ineffective for not obtaining recordings of his jailhouse telephone conversations with the victim and for not securing a certain police officer or a child of the victim to testify on his behalf. It appears that he also claims that his pleas of guilty were involuntary. Following an evidentiary hearing, the post-conviction court denied relief, and we affirm that denial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Anna Banks Cash, Jackson, Tennessee, for the appellant, Marcus A. Parram.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Nina W. Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the hearing, the Petitioner testified that his convictions were not just but that he had entered the pleas of guilty at the advice of counsel and by counsel's "somewhat putting fear into [his] family members and them causing [him] into [sic] taking these

pleas." He said that, in a thirty-minute meeting with trial counsel, they discussed possible defenses and he asked trial counsel to call the victim's friend who worked at a battered women's shelter to testify, but counsel did not pursue this line of proof. He believed this was his only pretrial meeting with counsel. The Petitioner said that on the day he entered his pleas of guilty, he complained to trial counsel that she had not issued subpoenas for the police officers or the victim's children to testify. Specifically, according to the Petitioner, he wanted, as witnesses, the victim's eldest son and Officer Heathcock, the arresting officer. He said that trial counsel told him he could receive a sentence of fifteen to sixteen years and that the "real reason [he] pled [was] because [his] mother was crying." He said that trial counsel told him that the police officers said they heard him threaten the victim, but the Petitioner later learned that Officer Heathcock had not made this statement to trial counsel and had never talked to anyone about the case. The officer told the Petitioner that he would come to court and testify for him.

As for the recorded jailhouse telephone calls between the Petitioner and the victim, the Petitioner said that the victim had told him that she was proceeding with the matter "because she was getting the assistance from the abused and battered women's shelter." However, trial counsel told the Petitioner she did not want to use the recordings because having contact with the victim was another violation of the order of protection. Although he originally had been indicted only for misdemeanors, he pled guilty to one felony because trial counsel told him, "[W]e can't beat the officers['] [testimony]." So, the Petitioner's family told him to accept the pleas and he could "go home today."

On cross-examination, the Petitioner said he had not understood that only the plea to domestic assault was a best interest plea. He acknowledged that, after being served with the order of protection, he had called the victim and gone to her residence. He did not recall sending the victim a letter from jail but did recall meeting her to retrieve his property from her house. The Petitioner acknowledged that, after he had been served with the order of protection, he went to the hotel in Nashville where the victim was attending a teachers' conference to try and convince her to reconcile with him.

Trial counsel testified that she had been retained by the Petitioner's family and had visited him in jail within two weeks after she received the discovery materials from the State. She gave the Petitioner a copy of the materials when she visited him. The Petitioner was charged in a second indictment, and counsel visited him several times at the jail. At the Petitioner's request, counsel for the State was at one of their meetings because the Petitioner wanted to make a "counter-offer" to the State. Trial counsel discussed with the Petitioner that, according to him, the victim had initiated some of the contact which resulted in his arrest. Trial counsel never spoke with Officer Heathcock, but from the discovery statements and the warrant, she knew what Officer Heathcock had observed and did not believe his testimony would have aided the Petitioner. The

Petitioner did not ask trial counsel to subpoena a child of the victim, and counsel did not tell the Petitioner that he could receive a sentence of fifteen to sixteen years.

On cross-examination, trial counsel said she visited the Petitioner five times before his pleas of guilty. Counsel did not believe that recordings of the jailhouse telephone calls would have aided the Petitioner because he was not supposed to have contact with the victim.

In its oral findings and conclusions following the testimony, the post-conviction court found the Petitioner had presented no clear and convincing proof that trial counsel had not acted "within the range of competence for an attorney practicing her[e] in Madison County." Trial counsel met with the Petitioner at least three times, as well as in court, and discussed the matters with him. At the hearing, the Petitioner put on no proof that Officer Heathcock's testimony would have been helpful to him, or what the child of the victim would have said, but gave only his claims as to their testimony.

The post-conviction court reviewed the plea agreement, which was admitted as an exhibit to the hearing, and determined that the Petitioner had been "afforded every opportunity" to have the plea agreement explained to him and that he had "asked a lot of questions and got a lot of answers." Finally, the court found that the Petitioner's guilty pleas were freely and voluntarily entered and denied the petition for post-conviction relief.

## ANALYSIS

On appeal, the Petitioner alleges that trial counsel was ineffective for not obtaining recordings of the jailhouse telephone conversations between him and the victim and for failing to contact Officer Heathcock or the victim's child regarding their testimony on behalf of the Petitioner. We will review these claims.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's

findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In this matter, the Petitioner has presented a hodgepodge of claims as to how witnesses would have testified had this matter gone to trial. However, these claims cannot suffice, for none of these witnesses testified at the evidentiary hearing. Thus, we are left with only the Petitioner's speculation as to how they would have been helpful to him. Trial counsel was questioned as to each of these witnesses. As to why she did not interview one of the arresting officers, trial counsel said that she had reviewed the records, and, given the officer's version of the facts, she could not envision how his testimony would have aided the Petitioner. Trial counsel denied that the Petitioner asked that she subpoena any of the victim's children, and no proof was presented at the hearing as to how such a witness would have testified. The problem, trial counsel explained, with using at a trial the recordings of jailhouse telephone calls between the Petitioner and the victim was that a number of the calls were initiated by the Petitioner, himself, which would have shown that he had violated the order of protection.

Finally, as to the Petitioner's guilty pleas, he failed to testify that he would have gone to trial on the matter had counsel performed as he claims she should have. Accordingly, we agree with the post-conviction court that the Petitioner failed to establish that trial counsel was ineffective or that he was prejudiced thereby.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE